HARRISON HOPPER *vs.* HENRY C. SMYSER—
HENRY C. SMYSER *vs.* HARRISON HOPPER.

*Conditional Sale or Mortgage—Conveyance of Property Subject to Mortgage—Covenant of Special Warranty—Contribution to Payment of Mortgage by Different Lots—Limitations—Appeal.*

Certain property was conveyed by deeds absolute in form and expressed to be for a valuable consideration. The grantor subsequently alleged that the deeds were intended to operate as mortgages to secure an indebtedness due by him to the grantee. *Held,* upon the facts, that the proof failed to sustain this allegation and that the conveyances were absolute deeds.

The distinction between a conditional sale and a mortgage is that in the former there is no right of redemption in the vendor after the time fixed for the payment of the stipulated price, while in the latter the right of redemption continues until a sale is made under a decree or until the lapse of twenty years after foreclosure, and that in the conditional sale there is not, while in the mortgage there is, a continuing personal liability for the amount named as the consideration.

If the relation of debtor and creditor exists between the parties when the conveyance is made and this relation is to be considered as subsisting after the conveyance is made, the transaction will be regarded as a mortgage, but if the debt is treated as extinguished, and the grantor merely has the privilege of obtaining the property by repaying the price the transaction is a conditional sale.

A debtor conveyed certain property to his creditor by a deed absolute in form and the grantee entered into possession and managed the property. No interest was paid on the debt or demand made therefor. The grantor alleged that the agreement at the time of the conveyance was that the grantee should sell the property, take from the proceeds the amount due him and pay the balance to the grantor. The grantee alleged that his promise was that if the grantor should pay the amount of the debt, the property would be reconveyed to him. *Held*, upon the facts, that the conveyances were not mortgages but conditional sales.

A person who was indebted to another, conveyed property to him to secure a certain indebtedness existing between them. The grantee subsequently alleged that the grantor was also indebted to him upon another claim, which at the time of the conveyance was barred by limitations, and that he intended the conveyance to stand as security for that claim also. This purpose of the grantee was not then communicated to the grantor. *Held*, that the conveyance under these circumstances did not remove the bar of the statute.

A covenant of special warranty in a deed conveying property, stated in the *habendum* clause to be subject to a mortgage, does not operate to bind the grantor to pay the mortgage.

Where a party conveys property subject to a mortgage, he is not personally bound to the grantee to pay the mortgage, and an undertaking to do so cannot be inferred from the fact that he subsequently paid the interest on the mortgage which embraced other property belonging to him besides that conveyed.

A debtor conveyed to his creditor lots A and B by deeds absolute in form in payment of an indebtedness, but upon the understanding that upon payment of the debt the property would be reconveyed to the grantor. At that time there was a mortgage covering lots A and B as well as three other lots retained by the grantor. In the

conveyance of lot A it was declared to be subject to the mortgage, while no mention of the mortgage was made in the conveyance of lot B. *Held*, that lot A so conveyed, must contribute to the payment of the mortgage, according to its value at the time of the conveyance, together with the three lots retained by the grantor and that lot B was not subject to be sold under the mortgage unless the other lots were insufficient to satisfy the same.

Where a party creates a mortgage upon several pieces of property and subsequently conveys his equity of redemption in one of these pieces retaining his equity in the other, the equity of redemption conveyed cannot be sold by the morgagee until those retained by the mortgagor shall have been exhausted.

A decree adjudging certain property to be exonerated from a mortgage until the exhaustion of other property for the payment is final in its nature and can only be reviewed upon appeal directly therefrom.

Cross-appeals from a decree of the Circuit Court No. 2, of Baltimore City (Sharp, J.)

The cause was argued before McSherry, C. J., Fowler, Briscoe, Page, Boyd, Pearce and Schmucker, JJ.

*Frederick C. Cook*, for Hopper.

The lower Court determined the conveyances of the Waverly lots and the Callahan farm to be conditional sales and not mortgages, and the conveyances of the Swan street, Marsh Market Space, and Garrison Forest road properties to be absolute and independent sales, and that Smyser was entitled to hold and dispose of the last-mentioned properties without accounting with Hopper therefor, but that Hopper might have a reconveyance of the Waverly lots and the Callahan farm upon paying to Smyser the sum of $6,213.19, the indebtedness found to be due by the Court from Hopper to Smyser on August 28, 1890 (thus disallowing the claim made by the plaintiff on account of the oyster business, and the aggregate of the sums paid for discount and interest on renewal notes), and that the Callahan farm should contribute to the payment of the mortgage indebtedness of Mr. George with the Harford avenue lots, the Silverwood avenue lots and the Montreal farm, as well as to the payment of the interest thereon since August 28, 1890; on a valuation of the

Harford avenue lots, at $8,000 ; of the Silverwood avenue
lots, at $1,330 ; of the Montreal farm, at $2,000, and of the
Callahan farm, at $10,000, and that the mortgagee (George)
should sell the properties covered by his mortgage in such
order as he might see proper, except that he should first
exhaust all the other properties before resorting to the
Waverly lots. The Waverly lots are thus freed from all
contribution to the mortgage as far as the other properties
covered by it are concerned.

The main questions determined by the lower Court, to
which objection on the part of Hopper is made, are two,
although there are several other matters of minor import-
ance also objected to by him. The first objection is, that
the Court did not hold the several deeds made in August,
1890, to be all parts of one transaction, and to be substan-
tially a mortgage to secure Smyser's proper claim against
Hopper. The other objection is, that assuming for the sake
of argument that the Court below was right in its decision
as to the character and effect of the transactions resulting in
the deeds of August, 1890, it erroneously decreed as be-
tween Smyser and Hopper that the Waverly lots should
not bear any share of the contribution to the George mort-
gage, but placed the whole liability therefor on the other
property embraced in it, when by the terms of the deed for
the Callahan farm, which, with the Waverly lots formed the
subject-matter of the supposed conditional sale, this sale
was made subject to the mortgage, in express terms as to
the Callahan but not as to the Waverly lots, because of a
mere oversight and mistake, and that by reason of such
mistake, they have not been freed from their proper contri-
bution to the George mortgage.

The first question depends upon the true intention of the
parties as shown in the evidence. The law bearing on this
question can be considered with the evidence itself. We
submit, that where, from all the circumstances of a transac-
tion, the Court is convinced that a deed absolute on its face
was only intended as a security for a debt, it will hold it to

be a mortgage as between the parties, and it will allow this
to be established by parol evidence ; and in a doubtful case,
if it appears, that the only consideration for the conveyance
was an antecedent indebtedness, the transaction will be held
to be a mortgage and not a conditional sale. *Brown* v.
*Rielly*, 72 Md. 489 ; *Bank of Westminster* v. *Whyte*, 1 Md.
Ch. 536 ; *Dougherty* v. *McColgan*, 6 G. & J. 275 ; *Artz and
wife* v. *Grove*, 21 Md. 474 ; *Baugher* v. *Merryman*, 32 Md.
185. Less danger of injury is likely to occur to the parties
by holding a transaction to be a mortgage, than by con-
struing it to be a conditional sale, particularly where an an-
tecedent debt is the only consideration. Such construction
will result in securing to the creditor his debt and to the
debtor his property after the payment of the debt ; and in
such cases it is proper to put the burden of proof on the
party alleging the transaction to be a conditional sale. The
fact that the property far exceeds in value the amount paid
for it always has great weight in producing the conviction
that a mortgage and not a sale was intended. *Conway* v.
*Alexander*, 7 Cr. U. S. 239 ; *Russell* v. *Southard*, 12 How.
U. S. 139.

The prayer of the bill of complaint asks the Court to
direct in advance the order of sale under the George mort-
gage, by decreeing the sale of the Silverwood avenue and
Harford road lots in discharge of the mortgage. The Court
determined that the Waverly lots should be exonerated
from the mortgage, provided the other properties included
therein should sell for sufficient to pay the same, and then
ordered that in the event of a sale the mortgagee should
sell the Harford avenue lots, the Silverwood avenue prop-
erty and Montreal farm in such order as he might see fit,
and that if the mortgage was not satisfied, he should sell
the Callahan farm and then if any unsatisfied balance re-
mained, he should proceed against the Waverly lots, and it
also decided that the Callahan farm should contribute to
the payment of the mortgage with the Harford avenue and
Silverwood avenue lots and the Montreal farm, and that the

conveyances of the Waverly lots and Callahan farm were conditional sales and not mortgages, referring the papers to the auditor to state an account of Hopper's indebtedness to Smyser, and of the profits made by Smyser on the purchase and sale of the Garrison Forrest, Swan street and Marsh Market property, and also of the amount due George under the mortgage itself reserving all other matters for future decisions.

Subsequently, on January 16, 1899, the Court passed its final decree determining the matters left open by the former decree, and among these the right of Mr. Hopper to have affirmative relief and an accounting with Mr. Smyser and a redemption and reconveyance of his property. This last decree denies Hopper any right to an accounting of the profits made by the sale of Garrison Forrest road and the Swan street property as well as the right to have the deeds of the Waverly lots and the Aberdeen farm declared mortgages, but gives him the privilege of repurchasing these lots and this farm within a limited time, and in the event of not so repurchasing his right is forever barred and extinguished, and Smyser declared to hold the Waverly lots and the Callahan farm as his own property absolutely. The farm is charged with a proportionate contribution to the payment of the mortgage to George along with the Harford avenue lots, the Silverwood avenue lots, that the Montreal farm, as of the date of August 28, 1890, with interest from that date, at the valuations expressed in the decree, and the mortgagee is ordered to " proceed to forthwith sell the properties covered by his mortgage, in such order as he may deem proper, except that he shall not sell the Waverly lots until after he shall have exhausted all the other properties covered by his said mortgage."

This decree should have charged the payment of the George mortgage equally upon all the property embraced in it, including the Waverly lots as well as the Callahan farm, under the view of the law applicable and most favorable to the plaintiff in this case, and not charged the mort-

gage primarily upon the Harford avenue, Silverwood avenue, the Montreal farm properties and the Callahan farm, in exoneration of the Waverly lots.

It is undoubtedly true, as a general rule, that a mortgagee must first sell on foreclosure, such parts of the mortgaged premises as the mortgagor still retains the title to, and then in the inverse order of alienation, such portions as he may have disposed of; but there are several exceptions to this rule. *National Savings Bank* v. *Creswell*, 100 U. S. 630; *Burger* v. *Greif*, 55 Md. 526. This general rule grows out of the equity that a purchaser paying full value for a piece of property, as if unincumbered, has to have that property free of incumbrance. In order to enforce his equity without injuring the mortgagee, the Courts direct the sale of the portion of the mortgaged premises retained by the mortgagor to be first made in exoneration of the portion sold. And so it follows that the last parcel retained by the mortgage must be first sold in the case of various transfers of different parcels of the mortgaged premises to different vendees, and the mortgagee must resort to the several parcels of the various vendees in the inverse order of alienation.

This general equity is necessarily qualified by the circumstances of every particular case, and certain well-recognized and obvious exceptions exists. As *ex. gr.* where the property is sold subject to the operation of the mortgage, etc., which imports that full value was not paid, " because this lot in common with the rest of the land was subject to the lien of the  *  *  *  mortgage," and that the purchaser " would be bound equally with other purchasers to pay his portion of the mortgage debt in proportion to the value of his lot." *Burger* v. *Greif*, 55 Md. 527. Or, where the mortgagor sells a part of the mortgaged land and by the deed charges the payment of the mortgage on the land so conveyed, in which case " the land so charged must be exhausted in satisfaction of this debt before any other parts of the mortgaged lands can be resorted to for payment, whether

they remain in the hands of the mortgagor himself, or have been conveyed to other parties." *Burger* v. *Greif*, 55 Md. 527. Or, where the deed is made subject to a mortgage, and the amount of the mortgage debt is withheld from the consideration money. *Wood* v. *Harper*, 41 N. Y. Suppl. 242. " Even one who has bought subject to a mortgage, without assuming the payment of it, so as to make himself personally liable, cannot contest the validity of the mortgage lien." When the amount of the mortgage has been deducted from the amount of the consideration of the purchase, it is in effect an agreement that so much of the purchase money shall be paid to the person holding the mortgage, and the mortgage is thus made a lien to the full amount of its face, although the mortgagee has, in fact, paid only a part of the consideration, although the mortgage is subject to other defences in the hands of the mortgagor. By conveying the land subject to a mortgage, the mortgagor provides for its payment in full out of the purchase money." 1 *Jones on Mortgages*, sec. 745 ; *Hopkins* v. *Warner*, 109 Cal. 133 ; *Heid* v. *Vreeland*, 30 N. J. Eq. 591 ; *Canfield* v. *Shear*, 49 Mich. 313.

A conveyance "subject to the payment of a mortgage" or any equivalant expression, imports a personal obligation by the vendee to pay the mortgage, or at least that the land conveyed is charged with debt. *Jones on Mortgages*, sec. 749 ; *Haines* v. *Denby*, 28 Atl. R. (N. J.) 798. And a verbal promise by a purchaser to assume the payment of a mortgage is valid and enforceable in equity, by either the grantor or the mortgagee. 1 *Jones on Mortgages*, sec. 750 ; *Ely* v. *McKnight*, 30 How. Pr. 97 ; *Moore* v. *Booker*, 4 N. Dak. 543, page 549; *Ordway* v. *Downey*, 18 Wash. 412 ; *Soc. of Friends* v. *Haines*, 47 Ohio St. 421.

In the present case the deed of the Waverly lots is made in consideration of $5 and other valuable consideration, and the deed of the Callahan farm is upon consideration of $5 and other good and valuable *considerations*, subject, however, to a mortgage, recorded, &c., and the other good and

valuable *considerations* appear also in the unrecorded deed, while the *only consideration* other than the nominal one of five dollars is the antecedent indebtness. What are the other good and valuable considerations? The *payment* of the mortgage, or *the subjection* of the particular parcel to the mortgage, might be one, This would indicate that the mortgage in some way was to be treated as a part of the consideration.

Whenever an equity of redemption is purchased, the law implies, from the nature of the transaction, a promise to indemnify the grantor to the extent of the property conveyed, even though no covenant or agreement to pay is expressly made by the grantee. I *Jones on Mortgages*, sec. 751 ; *Andrews* v. *Wolcott*, 16 Barb. 22 ; *Jumel* v. *Jumel*, 7 Paige, 594 ; *Lovelace* v. *Webb*, 62 Ala. 278 ; *New Eng. L. & T. Co.* v. *Stevens*, 16 Utah, 385.

Under the circumstances of this case, there is no evidence except the covenant in the deed of the Waverly lot and Mr. Smyser's own testimony, which goes to establish the fact that the grantor agreed to pay the mortgage. The true intent of the parties must be sought, and the covenants in the deed can only be looked to as evidence and not as imposing such an obligation by their technical effect, The equity of the transaction must be uncovered. *Aldrich* v. *Cooper*, 2 Wh. and T. Ldg. Cases in Equity, (4th Am. Ed.) 296, 305. Thus a deed with warranties on a consideration in fact of love and affection, to a grantee who knew of the existence of the mortgage, does not impose on the grantor the burden of paying off the mortgage in order to relieve the property in the hands of the grantee, but the latter should relieve the grantee from liability for the mortgage, the land being the primary security. *Adle* v. *Hallett*, 38 N. Y. Suppl., 273. This is also the case where a conveyance of land is made as security for an antecedent indebtedness, and no express agreement to pay off the mortgage on the part of the grantor is established. *Fullerton* v. *Brydges*, 10 Manitoba, 431. *Jackson* v. *Condict*, 41 Atl. Rep. (N. J.) 374.

It is accordingly submitted that the decree in this case should be reversed either for not declaring the deeds of August, 1890, to be mortgages, and directing an accounting; or because of ordering a sale of all the property in the George mortgage before the Waverly lots are sold, and in exoneration of them, if the said deeds are held to be conditional sales.

*S. S. Field*, for Smyser.

Smyser's claim growing out of the oyster business was disallowed upon the defense of limitations; but this defense is not applicable because Hopper gave Smyser deeds as payment or security for what he owed him, and Smyser can't be made to give up his deeds without receiving *all* that Hopper owed him, even though part of the debt was over three years old when the deeds were given. *Ohio Life Ins. Co.* v. *Winn*, 4 Md. Ch. 254, 262; *Lingan* v. *Henderson*, 1 Bland, 236, 282; *B. & O.* v. *Trimble*, 51 Md. 110.

While the claim was not expressly mentioned at the time Hopper gave Smyser the deeds, neither was any other claim; Hopper did not say to Smyser I convey these properties to you for the balance appearing on your bankbook; but he made the conveyances, as he says, "for the purpose of securing *any difference* that might be between us." And Smyser says that "the farm and the lots were to liquidate the amount of the indebtedness that he owed me." The deeds having been given generally for what was owing, may be held for *all* that is justly due. A debt does not cease to be a debt simply because a suit thereon could be defeated by limitations. "The *statute does not extinguish the debt*, but only bars the remedy." *Peterson* v. *Elliott*, 9 Md. 62.

The Callahan farm ought to be exonerated from the George mortgage, supposing, of course, the Harford avenue, the Silverwood avenue lots and the Montreal farm sufficient to pay it. Hopper gave the mortgage upon the

five properties ; then he conveyed the Waverly lots and the Callahan farm to Smyser, and, under the general rule, it is conceded that the three properties retained by Hopper should be first subjected to the mortgage. See the rule stated in—*Burger* v. *Greif*, 55 Md. 526, and 14 *Ency. of Law*, 1st Ed. 707.

But the Court below thought that the reference to the mortgage in the conveyance of the Callahan farm was sufficient to take that out of the operation of the general rule and make it contribute with the three properties retained by Hopper ; whereas I submit that the reference to the mortgage was simply put in to show the true state of the title as between Smyser and the mortgagee, but that, as between Smyser and Hopper, the latter agreed to pay off this mortgage, to the exoneration of the Callahan farm. In determining this question the chief desire of the Court will be to ascertain *what was the intention or agreement of Hopper and Smyser* upon this point ; and for that purpose will consider *all* the evidence *which is in the record and not excepted to.*

The deed is *in the premises* an absolute, unqualified conveyance in fee ; and the estate thus granted by the premises could not be cut down to practically nothing by the clause at the end of the *habendum* referring to the mortgage. *Budd* v. *Brooke*, 3 Gill, 202, 235 ; *Winter* v. *Gorsuch*, 51 Md. 180, 183. Besides this, the covenant of special warranty, following the *habendum*, bound Hopper to pay the mortgage recited in the *habendum*, just as well as any other incumbrance against the property. For by that covenant Hopper bound himself to warrant that farm to Smyser against the claims of " all persons claiming or to claim by, through or under him," (Code, art. 21, sec. 71), not excepting any ; and therefore not excepting George, who by this mortgage does claim under Hopper. If Hopper had intended to except the George mortgage from his covenant of warranty, it would have been very easy to have added to the covenant, " except as to the mortgage aforesaid."

The fact that an incumbrance is known to a grantee does not except it from the covenants in the deed. *Bryant* v. *Wilson*, 71 Md. 442-3; *Snyder* v. *Lane*, 10 Indiana, 424; *Gregg* v. *Wagner*, 71 N. C. 316. Nor does the mere recital in a deed " subject to " a certain mortgage except such mortgage from the covenants in such deed. This is clearly laid down in *Jones on Mortgages*, sec. 736. In such case, if the grantor does not mean to covenant against the recited mortgage, he should except such mortgage from his covenant. *Rawle on Covenants*, sec. 88; *Townsend* v. *Weld*, 8 Mass. 146, 147; *Estabrook* v. *Smith*, 6 Gray, 572, 578; *Gregg* v. *Wagner*, 71 N. C. 318.

The Court below decreed that the Callahan farm should bear part of the mortgage, and fixed the amount, by valuing the several properties liable, as of August 28, 1890, the date of the conveyance of the farm, and valuing the debt to be charged as of the present time; that is, adding to the principal of the mortgage nine years' interest, which Hopper has paid and extinguished, but which the Court resurrects and charges on the Callahan farm. The rule adopted by the Court, with the valuations found by it, produces this result: Less than one-fourth of the value of the Callahan farm would have paid its share of the mortgage in 1890; now it would take its entire value to do so. In other words, if Hopper had made in 1890 the claim he now makes, that the Callahan farm must pay part of the mortgage, Smyser could have discharged the claim with less than one-fourth of the farm; but, by waiting seven years before making any such claim, Hopper has the satisfaction of depriving Smyser of the entire farm. The Court finds that the Callahan farm was worth $10,000 in 1890, and its share of the principal of the mortgage, is adjudged (as appears by calculation) to be $2,344; this is all that the farm, then worth, according to the Court's decree, $10,000, would have been charged with had the claim been made in 1890, but now, says the Court, you must add nine years' interest, making the whole charge over $3,600, when the entire farm now

could not be sold for $3,600. Whatever fancies Hopper and his witnesses may have indulged as to the value of the Callahan farm in 1890, they all agree that it is worth very little now. If the Callahan farm must contribute along with the Montreal farm, the Harford avenue lots and the Silverwood avenue lots, to pay the George mortgage, the only way to equitably ascertain the share of each, under the circumstances and after this lapse of time, would be to direct public sales of all four properties and then charge each in proportion to what it should bring. And this has been adjudged to be the proper rule. *Bailey* v. *Myrick*, 50 Maine, 182–3 ; 2 *Jones on Mortgages*, sec. 1090. And I submit that the Court's action in charging the Callahan farm with nine years' interest is entirely indefensible.

PEARCE, J., delivered the opinion of the Court.

This record presents cross-appeals from two decrees of Circuit Court No. 2, of Baltimore City, and all the questions arise upon four conveyances of real estate from Harrison Hopper to Henry A. Smyser, as follows :

1st. A deed of August 15th, 1890, for certain Baltimore City property in consideration of $3,500.

2nd. A deed of August 20th, 1890, for thirty-five acres of land in Baltimore County, designated as Garrison Forest, for five dollars and other valuable considerations.

3rd. A deed of August 22nd, 1890, for the Waverly lots in Baltimore County, for five dollars and other valuable considerations.

4th. A deed of August 28th, 1890, for a farm in Harford County, called the Callahan farm, for five dollars and other valuable considerations, subject to a mortgage for $5,000 previously made by Hopper to Isaac S. George upon this, and four other properties, known as Harford Avenue, Silverwood, Montreal, and the above-mentioned Waverly lots.

When these conveyances were made Hopper was indebted to Smyser upon a certain bank-account kept by Smyser,

with him, in the sum of $6,213.90, as Smyser claims, or as Hopper claims, in the sum of $5,187.50. Smyser also claims that Hopper was further indebted. to him at that time in the sum of $3,119.33, being one-half the profits of an oyster business carried on by Hopper and Smyser in 1881 and 1882, but Hopper claims that these profits had been long since settled. The respective contentions as to these conveyances are as follows :

Hopper claims that they all constitute one transaction, and were made, in his own language, " *to secure any difference that might be between them,*" and for no other consideration or purpose. Smyser claims that the Baltimore City and Garrison Forest properties covered by the first and second deeds, were absolute purchases for full value, fully paid, but admits that the Waverly lots and the Callahan farm, covered by the third and fourth deeds, were conveyed *in payment of Hopper's indebtedness to him at that time*, with the privilege of repurchase upon the repayment of the same amount, and declares that he is now, and always has been, ready to reconvey upon these terms. Smyser filed a bill in equity against Hopper and George alleging that he purchased the Waverly lots with special warranty from Hopper, and upon the understanding and agreement with him that Hopper should discharge the George mortgage, without which he would not have made the purchase, but that George refused either to release said Waverly lots from his mortgage or to assign the same to Smyser upon payment by him, but was ready to assign the same upon payment, either to Hopper or anyone he should name, and the prayer of the bill was that George should be restrained from assigning his mortgage to anyone pending that proceeding, and that the other properties covered by the mortgage, might be sold in exoneration of the Waverly lots, unless George should release the same. Answers were filed and it was agreed that Hopper's answer should be treated as a cross-bill praying for an accounting between the parties, and a reconveyance of the property conveyed by Hopper

to Smyser, and that decree might be made according to the proof. Testimony was taken, and the Court on March 25th, 1898, decreed the Waverly lots be exonerated from the George mortgage, provided the other properties covered by the mortgage should sell for sufficient to pay the mortgage debt, and that if not sufficient, then the Callahan farm should be sold before the Waverly lots, that in any event the Callahan farm must contribute to the payment of the George mortgage rateably with the other properties according to their respective values ; and that the conveyances of the Callahan farm and the Waverly lots were conditional sales, and not mortgages.    The decree directed the auditor to state an account of Hopper's indebtedness to Smyser at the date of the conveyances, and to report the profits realized by Smyser in the purchase and subsequent sale by him of the Baltimore City and Garrison Forest properties, and the amount due on the George mortgage.    All other matters were reserved for the future decision of the Court. From this decree both parties appealed, *but neither party sent up the record.*

The auditor filed three accounts, A, B and C :

Account A showed Hopper's indebtedness to
    Smyser on the bank-book to be on August
    28th, 1890  . . . . . . . . . . . $6,213 19
And on the oyster business at the same date  . $3,119 33
                                               ――――――――
                                               $9,332 52

Account B showed Smyser's profit on the Bal-
    timore City and Garrison Forest to be  . . $1,775 51
And Account C showed amount due on George
    mortgage April 9, 1898, to be . . . . . $5,300 00

Hopper excepted to all these accounts, pleading payment and the statute of limitation to the item of $3,119.33, and claiming credits of $1,026.40 upon the bank-account as allowed by the auditor.    To account B he excepted because it did not allow certain items which would increase Smyser's profits from $1,775.51 to $2,973.68.    To account

C he excepted because it only ascertained the amount due
on the George mortgage at the date of that account, and
not the amount due at the date of the conveyance, together
with the interest since paid thereon and the expenses in-
curred to prevent foreclosure by George, for all of which
he claims the Callahan farm is liable to contribute.   The
Court on January 26, 1899, decreed that the conveyances
of the Baltimore City and Garrison Forest properties were
absolute and independent sales for considerations then paid,
and that the claim for any profits therefrom be disallowed,
thereby eliminating account B from its further consideration.
It overruled Hopper's exception to account C and ratified
the same, saving as between Hopper and Smyser their con-
tribution to the George mortgage as thereafter directed by
that decree.   It sustained Hopper's exception to the item
of $3,119.63 as barred by limitation, or if not so barred,
as a stale claim, and not satisfactorily shown to have been
in the contemplation of the parties as part of the debt to be
paid.   All Hopper's other exceptions to account A were
overruled, and the same as modified was ratified, the decree
declaring $6,213.19 to be the indebtedness from Hopper to
Smyser, August 28, 1890, for which the Callahan farm and
the Waverly lots were conveyed to him, and ordering that
upon payment of said sum by Hopper within thirty days
from that date, Smyser should reconvey said properties to
Hopper at his cost, and that on Hopper's failure to comply
with said order he should be forever barred from the right
to repurchase, but that the Callahan farm in that event
should contribute to the payment of the George mortgage,
as of August 28, 1890, with the other three properties cov-
ered thereby, in proportion to the valuations fixed thereon
by the decree.

From this decree, and from all previous decretal orders
passed in the cause both parties have appealed.

So much of the decree of March 25th, 1898, as exon-
erated the Waverly lots from the George mortgage until
the exhaustion of the other mortgaged properties, is in the

nature of a final decree, and such orders and decrees were held in *Tome* v. *Stump*, 89 Md. 264, not to be open for revision under sec. 26 of Art. 5 of the Code, but only on appeal directly therefrom under sec. 24 of Art. 5. We cannot therefore *now* consider that question. But if we could do so we should be compelled to affirm that part of the decree, because it is too well settled to require the citation of authorities that where one person has a lien upon two or more pieces of property, and another has a lien but upon one of these pieces, the first lienor will be compelled in equity first to exhaust those pieces not covered by the lien of the second lienor; and that where one creates a mortgage upon several pieces of property, and subsequently conveys his equity of redemption in one of these pieces, retaining his equity in the others, the equity of redemption conveyed cannot be sold by the mortgagee until that retained by the mortgagor has been exhausted. This case does not fall within the exception mentioned in *Burger* v. *Greif*, 55 Md. 528, where the purchaser's liability to pay part of the mortgage debt forms part of the consideration, nor do we perceive anything in *Nat. Savings Bank* v. *Creswell*, 100 U. S. 630, to prevent the application of the principle to which we have alluded. The other matters determined by the decree of March 25th, 1898, which directed the statement of accounts to make the decree effective, are of course open for revision here under sec. 25 of Art. 5 of the Code, together with the matters determined by the decree of January 26, 1899.

The questions we are to decide may be stated thus :

1st. Were the conveyance of the Baltimore City and Garrison Forest properties absolute and independent sales, or do they stand on the same basis as the Waverly lots and the Callahan farm ?

2nd. Were the conveyances of the Waverly lots and the Callahan farm conditional sales, or mortgages ?

3rd. What was Hopper's indebtedness for which the Waverly lots and the Callahan farm were conveyed ?

4th. Must the Callahan farm contribute rateably with the Harford avenue, the Silverwood, and the Montreal properties, to the payment of the George mortgage, and if so, upon what basis?

We will consider these questions in the order in which they are stated..

1st. The conveyances of the Baltimore City and the Garrison Forest properties, though not set out in full in the record, are described therein as absolute deeds upon their face for valuable and full considerations. These conveyances are attacked by Hopper in the answer which is treated as a cross-bill, and his effort is to establish by parol, an express trust in the face of the Statute of Frauds pleaded by Smyser. We may say here, as was said in *Kidd* v. *Carson*, 33 Md. 42 : "It is not alleged that this deed is different in form and character from what the parties intended at the time of its execution. On the contrary, it is admitted to be just such a deed as they intended to make. * * * To enforce the agreement set up here would be to change the character of the deed drawn up and executed as the parties intended it and to set up a conventional trust on the foundation of a special parol agreement. This cannot be done." But if it could be done, it would be incumbent upon Hopper to establish the agreement by satisfactory proof, and in this it is proper to say we think he has failed. He says he owed Smyser a considerable sum which both parties were anxious to have *paid*, and then he says, " I suggested to him the delivery to him of *these two deeds* (for the Callahan farm and Waverly lots) and not one cent of consideration passed. I gave *them* to him to secure the old indebtedness." He had previously admitted that Smyser paid $3,500 for the Baltimore City property, of which $2,000 was applied to his debts assumed by Smyser,. and he received $1;500 ; also that Smyser had paid $2,500 for Garrison Forest, of which $1,475 was applied to a lien created by him thereon, and that he received $975. It is most significant that he should thus confine this declaration

to the *last two deeds*, and it is impossible to believe that if all these conveyances had been made for the purpose claimed by Hopper, Smyser would not have applied these sums of $1,500 and $975 to Hopper's indebtedness instead of handing it over to him. Upon every view of this branch of the case we are of opinion the Circuit Court was correct in declaring these two conveyances to be absolute and independent sales.

2nd. The material distinctions between a conditional sale and a mortgage, are that in the first there is no right of redemption in the vendor after the expiration of the time fixed for payment of the stipulated price, while in the other, the right of redemption continues until sale actually made under decree, or until twenty years after strict foreclosure ; and that in the first there is not, and in the latter there is, a continuing personal liability for the amount named as the consideration of the conveyance. It is often difficult to draw the line between a mortgage and a conditional sale. "The intention of the parties is the *only* true and infallible test, and this intention is to be gathered from the circumstances surrounding the transaction, and the conduct of the parties." *Jones on Mortgages*, sec. 258.

" The inquiry is, and always must be, whether the contract in the particular case, is a clear actual sale, or a security for a continuing debt." *Dougherty* v. *McColgan*, 6 G. & J. 281. If the relation of debtor and creditor exists when the conveyance is made, and this relation is regarded as subsisting after the conveyance is made, the transaction will be regarded as a mortgage ; but if the debt is treated as extinguished, and the vendor has the privilege merely of refunding the price, the transaction is a conditional sale. With these principles in view, we find that Hopper says he wanted the notes *paid*, and made the deeds for that purpose ; that Smyser was to sell the property, retain the amount due at the date of the conveyances, and the surplus was to *revert* to him. Smyser says :  " When I purchased the property, Mr. Hopper thought it was worth

more than he owed me, and I then told him I would give him the privilege of paying what he owed me, and I would deed the property back." These declarations certainly comport better with a conditional sale than with a mortgage, and the conduct of the parties points to the same conclusion. . Had the transaction been intended as a mortgage, the natural course would have been for Hopper to retain some possession or control of the property, to select the tenants, determine improvements, collect the rents, and pay interest on the debt, and taxes on the property. But he did none of these things. On the contrary we find Smyser exercising all the rights of absolute owner—selecting tenants, paying taxes, repairing fences, making improvements, and even purchasing a road as a better outlet from the farm, and keeping no account of receipts as the basis of a future accounting with Hopper.

There is no evidence of any recognition by either party of any subsisting debt, Hopper neither paying, nor offering to pay, either principal or interest, and Smyser making no demand for either. What was said by CHIEF JUSTICE MARSHALL in the leading case of *Conway* v. *Alexander*, 7 Cranch 218, is precisely in point here : " An action at law for the recovery of the money certainly could not have been sustained, and if, to a bill in chancery praying a sale of the premises and a decree for so much as might remain due, Robert Alexander had answered that this was a sale, and not a mortgage, clear proof to the contrary must have been produced to justify a decree against him." We are, for the reasons indicated, of opinion that these two conveyances were conditional sales.

3rd. As to the amount of Hopper's indebtedness to Smyser, which formed the consideration for these two conveyances, we think the decree was correct. Upon Hopper's examination-in-chief, he was asked if he had examined the bank-book, which showed an indebtedness thereon of $6,213,90, and if so, what he had to say as to the correctness of the various charges and credits therein, and to point out

any erroneous or irregular items, and he distinctly admitted that that account was correct, except the Ijams note of $125, which he says was never paid. But Smyser on his cross-examination states positively that he paid this note. Smyser's testimony, being supported by the bank-book, must prevail over Hopper's testimony which is contradicted thereby and is not otherwise confirmed.

Without considering whether the sum of $3,119.33, allowed by the auditor as profits from the oyster business, had been settled, as claimed by Hopper, we thinkt his exception thereto was properly sustained. This claim dated back to 1882 or 1883, and was open to the plea of limitations four years before the making of these conveyances. It is true that Hopper says the conveyances were made to secure "any indebtedness that might be between us," and ¹that Smyser says that *he took this item into account* in estimang Hopper's indebtedness at that time, but he does not say that Hopper *knew he took this into account.* Hopper testifies that it was never mentioned between them for fourteen or fifteen years before the taking of the testimony in this case, and Smyser was not recalled to rebut this. Indeed his testimony leads us to infer that the last time he mentioned the subject to Hopper was in 1883, when he asked him to put it on the bank-book, but could not get him to do it. We cannot find in the record any satisfactory evidence that this item was then within the contemplation of Hopper as the bank-account clearly was, and if not within his contemplation, the execution of these conveyances cannot remove the bar of the statute.

4th. This brings us to the last question presented, the liability of the Callahan farm to contribute to the George mortgage, and this depends upon the effect·to be given to the covenant of special warranty in the deed from Hopper to Smyser, which covenant immediately follows the *habendum*. Counsel for Smyser contends that the covenant of warranty binds Hopper to pay the mortgage, because it is not expressly excepted *in the covenant itself* from the opera-

tion of the covenant, and he has cited certain passages from *Jones on Mortgages* and *Rawle on Covenants for Title*, as well as certain decisions, which at first sight give some color to his contention; but without pausing to analyse these authorities and to determine how far they do in fact sustain him, we are of opinion that our own decisions are clearly adverse to his contention, and that these decisions correctly announce the law upon the subject. In *Zittle* v. *Weller*, 63 Md. 190, the Court says on page 198 : "There is a covenant of warranty in the deed, and for further assurances, *but these covenants can only relate to and operate to assure the interest and estate which is described as convey*ed." In the subsequent case of *Second Universalist Society* v. *Dugan*, 65 Md. 460 ; the Court said : "The covenant is to be construed with reference to the estate and interest which is described as conveyed ; *and which the habendum clause limits* ; and the obligation to assure, which is thereby enacted, can, and should only be held to be an obligation to assure the precise estate granted in the deed and nothing more. Being co-extensive with the estate granted, it ceases when that ceases. This was the view maintained in *Zittle* v. *Weller*, 63 Md. 190. No authority is there cited, but abundant authority exists. In 2 *Coke Littleton*, 385*b*, it is said 'a warrantie of itsself cannot enlarge an estate' * * The same statement of the law is made in *Sheppard's Touchstone* vol. 1, 182. In *Rawle on Covenants for Titles*, p. 415, it is said to be a familiar principle that warranty will not enlarge an estate. Warranty is a defence and not a title." There is no conflict between this decision, and that of *Winter* v. *Gorsuch*, 51 Md. 180; where the *habendum* was declared void because it cut down to a life-estate the absolute and unqualified interest given by the premises. In this case the *habendum* has no such effect. The estate of inheritance granted by the premises is not cut down by the *habendum*. The inheritance is charged with its proportion of the George mortgage, but it is none the less an inheritance : no change is worked in the character or quality of the estate by the

terms of the *habendum*, and there is no repugnance unless the *habendum* divests the estate granted and substitutes some other estate therefor.

Apart from the effect of the *habendum* and the covenant of warranty, we cannot find sufficient evidence of an agreement by Hopper to pay this mortgage. Smyser's testimony that Hopper did agree to pay it, not being excepted to, is in this case and must be allowed its full force (*Gibbs v. Gale*, 7 Md. 76); but it is flatly denied by Hopper, and the deed is in accord with his statement. It was argued, however, that Hopper's continued payment of the interest on this mortgage is a recognition of his liability under the alleged agreement; but we cannot give such far reaching effect to this conduct. That mortgage covers other valuable property of Hopper's, and his payment of the interest may well have been made to prevent a sale of the other property.

We deem it unnecessary to prolong this opinion by any inquiry into the valuation put upon the Callahan farm for the purpose of determining its contribution to the mortgage. There is a wide divergence among the witnesses as to its present value but there is a substantial concurrence that it was worth from $40 to $60 per acre in 1890, and we therefore think the Court's valuation reasonable and fair to all parties.

Both decrees of the Circuit Court No. 2 are affirmed, and the costs in that Court and also in this Court will be equally divided between the appellant and the appellee.

*Decree affirmed.*

(Decided January 9th, 1900).