D. C. TRANSIT SYSTEMS, INC. *v.* STATE ROADS COMMISSION OF MARYLAND ET AL.

[No. 82, September Term, 1970.]

*Decided November 13, 1970.*

*Motion for rehearing filed December 18, 1970; denied January 4, 1971.*

The cause was argued before HAMMOND, C. J., and MC-WILLIAMS, FINAN, SMITH and DIGGES, JJ.

*R. Edwin Brown,* with whom was *D. Warren Donohue* on the brief, for appellant.

*Earl I. Rosenthal, Special Attorney,* with whom were *Francis B. Burch, Attorney General, Joseph D. Buscher,*

*Special Assistant Attorney General,* and *Herbert W. Reichelt* on the brief, for appellee State Roads Commission of Maryland; and *John W. Middleton* on the brief, for appellees George A. Dorr et al.

SMITH, J., delivered the opinion of the Court.

After instituting condemnation proceedings in the Circuit Court for Prince George's County against certain land then alleged to be owned by D. C. Transit Systems, Inc. (the Transit Company), appellant, the State Roads Commission (the Commission), filed an amended petition claiming that the Transit Company owned only an easement and naming as additional parties defendant the heirs of the original grantors of the instruments it claimed to have granted the easement. It then filed in the condemnation proceeding a motion for declaratory judgment and other relief. The trial judge (Loveless, J.) signed an order holding that a fee simple title to the various parcels of land was vested in the "unknown heirs, devisees, successors or assigns" of the original grantors and that the fee simple estates were held "clear and discharged of any use or interest of any kind for or on behalf of the defendant, D. C. Transit Systems, Inc." We shall affirm that portion of the order which held the instruments to have granted an easement rather than a fee simple estate. We shall remand for further proceedings without affirmance or reversal the finding that the franchise has been abandoned.

The Transit Company raises three questions on appeal which may be summarized as: (1) whether the Commission may be allowed to amend its condemnation proceeding filed pursuant to Code (1957), Art. 89B, § 9, after it has taken possession of the land so as to allege that the original defendant land owner does not own the land which it was alleged to have solely owned in the orginal petition; (2) whether the instruments in question granted an easement or a fee simple estate; and (3) whether the easement had been abandoned.

The land in question was desired for the widening of Rhode Island Avenue. It was said to be a strip with an average width of 60-70 feet running from the District of Columbia line to Farragut Street in Hyattsville. The sum of $74,725.00 was deposited in court. The Commission took actual possession of the land on November 24, 1967. The original petition, filed on September 26, 1966, alleged ownership in the Transit Company under a deed from The Capital Transit Company recorded in 1956. Hearing on the petition to amend was held on March 12, 1969. The trial judge granted the Commission leave to amend saying in pertinent part:

"So I am going to grant the motion to amend with it being fully understood that I, at this time, do not feel that it can go to an ultimate condemnation, as amended, with six to twelve different properties being involved. * * *

"I am granting the amendment; you have permission to amend. I think I have given my reasons for it and I made it clear. I think it would be a waste of time to hear the proper testimony as to this title because I am assuming that it's there, and I don't want to pass upon whether it's good or not.

"I am doing this solely in the interest of justice. I feel the State Roads Commission, in the vernacular, goofed in this case and was probably done on a title examination. From experience, as I recall, you would take a deed back twelve years or twenty years, something like that, and if there was nothing to indicate it was to the contrary you would go no further. I see mentioned here we are going back into 1895, and so forth, on these various things. So I can see why a title examiner would make such an error. But it has been a goof."

The amended petition alleged title held in fee simple in a number of individuals, seven of which transactions

are here in issue. Essentially the same language was contained in each of the seven deeds to Columbia and Maryland Railway, a predecessor of the Transit Company. Typical is the instrument executed by George A. Dorr and wife on June 4, 1896. It reads in pertinent part as follows:

"That in consideration of the sum of One Dollar, the said party of the first part do—grant and convey unto the party of the second part, its successors and assigns all the piece or parcel of land situate, lying and being in Prince Georges County, State of Maryland, and particularly described on a plat made by the party of the second part or its agents (the same being a plat of the Rights of way of the said Columbia and Maryland Railway and to be recorded among the Land Records of Prince Georges County) as follows, to wit: Beginning for the same at a point 40 feet distant from the centre line of the right of way of the Columbia and Maryland Railway, being the centre of a street as laid out by the Holladay Company and running thence North 47 degrees East, 690 feet, thence by a line curving to the left of 9678 feet radius parallel to the centre line and 40 feet distant therefrom 45 feet, thence along the northwest branch to a point 40 feet distant from the said centre line on opposite side, thence by a line of 9758 feet radius curving to the right, parallel to the centre line and 40 feet distant therefrom 87 feet, thence south 47 degrees west 800 feet to the Mill Race; thence along the Mill Race to the centre of the said street, thence along the centre of said Street North 36 degrees and 5 minutes East 129 feet to the place of beginning containing 68501 square feet or 1 573/1000 acres, as described on plat No. 11 of said Right of Way.

"Together with the improvements thereon, and all the rights, roads, ways, appurtenances and advantages thereto belonging or in anywise appertaining.

"To have and hold the same unto and to the use of the Columbia and Maryland Railway its successors and assigns *for a right of way* and such other purposes as said Railway Company is authorized under its act of incorporation, the Act of 1892, chapter 383, the Act of 1894 chapter 274, and the General Incorporation Law of this State to acquire, dispose of or deal in real estate." (Emphasis added.)

It then concludes with covenants of special warranty and further assurances.

Chapter 383 of the Acts of 1892 noted the formation of Columbia and Maryland Railway; provided the further power to construct the railroad from Washington to Laurel "and thence to the Pennsylvania line by any practicable route which it may select through Prince George's, Montgomery, Howard and Frederick Counties"; and provided that it should "also have power to purchase, acquire, hold, sell, lease, dispose of and convey real or leasehold property, not exceeding fifty thousand acres, and lay out thereon town sites and erect hotels, elevators or other buildings, and to use and manage the same in any lawful way whatever and to open and work quarries and generally to make such lawful use of its said landed or other property as it shall deem desirable." Chapter 274 of the Acts of 1894 provided that in addition to its other powers it should have the power to construct and operate a railroad through the counties of Baltimore, Harford and Cecil.

In the motion for declaratory relief the Commission alleged that the various strips of land here under consideration were owned in fee simple by the various grantors to Columbia and Maryland Railway; that D. C. Transit Systems, Inc., "only had a mere right of way"; and that

these various easements "ceased to exist by the abandonment and termination of usage of the tracks and overhead wires by the D. C. Transit Systems, Inc." The trial judge said in pertinent part:

> "It is stipulated that these deeds are in the chain of title of the D. C. Transit chain of ownership, and there seems to be no question D. C. Transit is no longer at this time operating a street railway. Some question exists as to whether some tracks were still in the roadbed at the time the State commenced building there, but there is no apparent question that whether the tracks were in the road or not that the right of way was not being used at that time.
>
> "This allegation has not been denied by the D. C. Transit Company in any of the pleadings and, basically, the D. C. Transit's opposition to the motion as to declaratory relief is based on technical grounds, and that such questions that the State has raised cannot and should not be raised now, and that there were insufficient exhibits attached to the pleadings."

The "technical arguments" were held "basically moot and without merit".

Prior to the signing of the decree, counsel for the Transit Company proffered to prove that it had made agreements for the use of parts of the strip of land with the Washington Gas Light Company, the Washington Suburban Sanitary Commission, the American Telephone and Telegraph Company, the Potomac Electric Power Company and Prince George's County. It claimed that A.T. & T. was paying an annual rent, that the Transit Company had "maintained this land, that they have maintained the drains, they maintained the bridges, they have protected it from encroachment"; that the land is assessed on the real estate records of Prince George's County to the Transit Company "and they have paid taxes on it since 1895, and they currently are assessed for it"; that the Transit

Company "has considered a use of this right of way for minibus service, that they have considered the use of this right of way for a monorail system, and that they have had discussions with the Metropolitan Transit Authority in the District of Columbia as to how to ultilize this strip of land"; and that at the time of the condemnation the land was in use for electrical transmission and a lot of the lines were taken down "to keep them from being vandalized and for salvage rather than any active abandonment". He concluded with a proffer "to prove by evidence here that there has been no intention on the part of D. C. Transit in any way to abandon the land" without specifying further as to what that evidence would be.

We conclude upon the authority of *Concannon v. State Roads Comm.*, 230 Md. 118, 186 A. 2d 220 (1962), that the order here was an appealable final order since, paraphrasing the language of Chief Judge Brune in that case, the Transit Company is deprived of the means of proceeding further to enforce the right which it asserts.

## I.

The Transit Company sees *Concannon v. State Roads Comm.*, 231 Md. 87, 188 A. 2d 700 (1963), as being authority against the amendment the Commission here sought. It might well have also cited *State Roads Comm. v. Lancaster*, 248 Md. 154, 235 A. 2d 729 (1967). In each of those cases the Commission sought to amend the petition and plats in a "quick take" situation after it had already entered into possession. In other words, the Commission was seeking to change the boundaries of the land it was acquiring after entering into possession. As Judge Sybert said for the Court in *Concannon*, at page 93, and as Chief Judge Hammond quoted from *Concannon* in *Lancaster*, "The statute does not vest the Commission with authority to change or abandon its plans to acquire what the *recorded* plats show after construction begins." (Emphasis in original.) The Court went on in *Concannon* to say:

"We therefore conclude that a taking of part of . .

the property and easements delineated on the original plat as intended to be taken was an appropriation of the whole, so that the Commission may not now unilaterally return unused portions to the owner and by that device effect a diminution of the ultimate award to the property owner." *Id.* at 94.

Here we do not have an attempt after the taking to change the amount of land to be taken, but an addition of parties.

One might infer that the Transit Company is under the impression that payment of the estimated damages into court in some way vests it with title to that sum as the named defendant. That such is not the case can readily be perceived when it is noted that Code (1957), Art. 89B, § 9, provides that if payment of the sum is made to the property owner, he must agree "to pay back to the State Roads Commission the difference between said sum and the final award, if such final award be less than the sum paid into court."

It is elementary that the condemnor in a condemnation proceeding obtains only such title as was owned by the parties to the condemnation proceeding. See *Nichols on Eminent Domain*, § 5.2 [2] (Rev. 3rd ed. (Sackman), 1965), which states:

"If the wrong person is designated as owner and is paid the award and the real owner is not made a party, the proceeding is not *res adjudicata* as against the latter, and he may recover compensation from the condemnor before his land can be lawfully occupied. When, however, the land of unknown owners is condemned, and after a lapse of several years a claimant appears and obtains the award by a decree of the court, the only remedy of the true owner is an action against the first claimant for money had and received."

In other words, the Commission could not obtain from the Transit Company a fee simple title to land in this proceeding if the Transit Company owned only an easement.

Maryland Rule U3 provides for condemnation proceedings to "be governed by the rules of procedure and evidence applicable to other actions at law" except as otherwise specified in that subtitle. There is no provision in that subtitle which would appear to forbid the amendment here sought. Maryland Rule 320 a 1 provides for courts to permit amendment to "any of the proceedings" to the end "that the case may be tried on its merits."

In *Concannon*, 230 Md. 118, although observing that the Court was not at that time passing upon the merits of the controversy relative to the right to amend but only on the motion to dismiss, Chief Judge Brune at page 123 said for the Court, "[E]minent domain proceedings can be amended at the instance of the condemnor so long as there is no prejudice to any substantial right of the property owners." In *United States v. 1.44 Acres of Land, etc., Montgomery Co., Md.*, 304 F. Supp. 1063 (D. Md. 1969), the federal government initially alleged ownership of land in fee simple by the same Transit Company. That case was brought under the federal "early taking" statute and an advance taking was ordered in July of 1966. Much later the government sought to amend to show that the Transit Company had been possessed of an easement which had been abandoned and that the full interest was in third-party owners of the fee. Judge Northrop permitted the amendment under Rule 71A (c) (2) of the Federal Rules of Civil Procedure which provides in pertinent part:

> "Upon the commencement of the action, the plaintiff need join as defendants only the persons having or claiming an interest in the property whose names are then known, but prior to any hearing involving the compensation to be paid for a piece of property, the plaintiff shall

add as defendants all persons having or claiming an interest in that property whose names can be ascertained by a reasonably diligent search of the records, considering the character and value of the property involved and the interests to be acquired, and also those whose names have otherwise been learned."

Our Maryland Rule U6 requires that the petition contain "[t]he names of all persons whose interest in the property is sought to be condemned".

We conclude that there was no abuse of discretion on the part of the trial judge when he permitted the condemnor to file an amended petition for the purpose of including as parties defendant such parties as were claimed to be necessary for the obtention of a valid, fee simple title to the land sought to be condemned, which parties were not included in the original petition. This action prejudices no rights. It simplifies and shortens litigation, rather than complicating and protracting it. It protects the interests of all parties.

## II.

The Transit Company argues that Code (1957), Art. 21, § 7, provides that words of inheritance are not necessary to create an estate in fee simple, but that a fee simple estate shall be passed unless a contrary intention appears; that § 9 provides that the word "grant" in a deed shall be construed to pass to the grantee the whole interest and estate of the grantor unless a contrary intention appears; that the *habendum* clause recites that the land is granted to the grantee "for a right-of-way and such other purposes as said Railway Company is authorized under its act of incorporation, the Act of 1892, Chapter 383, the Act of 1894, Chapter 274, and the General Incorporation Law of this State to acquire, dispose of or deal in real estate"; that these latter words have the "clear meaning" of "mak[ing] an outright, unrestricted grant to the railway not only for a right-of-way but also for such other

purposes as their corporate charter and the corporation laws of the State allow"; and that in *Marden v. Leimbach,* 115 Md. 206, 80 A. 958 (1911), our predecessors held that where there is conflict between the granting clause and the *habendum* clause, the former will prevail.

In *Marden* the Court said at page 209, "It is, of course, elementary that where there is a conflict between the granting and *habendum* clauses, the former will prevail." Our predecessors went on, however, in the same paragraph to add:

> "A familiar illustration of such a repugnancy is where the granting clause is in fee and the *habendum* is only for life. *Winter v. Gorsuch* [51 Md. 180 (1879)]. But there is no such conflict unless the *habendum* divests the estate granted and substitutes another. *Hopper v. Smyser,* [90 Md. 363, 385, 45 A. 206 (1900)]." *Id.* at 210.

It further added:

> "It is a cardinal rule in the construction of deeds that 'the intention of the parties, to be ascertained from the whole contents of the instrument, must prevail unless it violates some principle of law.' " (Citing authorities) *Id.* at 210.

Later authorities also holding that the intention of the parties must be ascertained are *Desch v. Knox,* 253 Md. 307, 310, 252 A. 2d 815 (1969), and *Green, Tr. v. Eldridge,* 230 Md. 441, 447, 187 A. 2d 674 (1963).

In *United States v. 1.44 Acres of Land, etc., Montgomery Co., Md., supra,* one of the conveyances granted the predecessor of the Transit Company "a right of way for its chartered purposes upon and over the strip of land in controversy in said case", referring to a proceeding in the Circuit Court for Montgomery County in which a trustee had been appointed to make the conveyance. Correspondence between Stilson Hutchins, the owner of the land at the time of the construction of the Washington and Great Falls Railway, was said by the U. S. Court to

have been quoted in the circuit court's opinion as stating "that the company could find no deed for a right of way through [Hutchins'] property". Judge Northrop said:

> "The court cannot help but equate the term 'for its chartered purposes' with the term 'for railroad purposes.' *See* East Washington Ry. v. Brooke, 244 Md. at 294, 223 A. 2d 599. These factors all reinforce the plain language of the Talbott deed granting an easement." *Id.* at 1071.

The court held, "The plain meaning of the Talbott deed is to convey an easement."

In a footnote in *Ma. & Pa. RR. Co. v. Mer.-Safe, etc., Co.,* 224 Md. 34, 36-37, 166 A. 2d 247 (1960), Judge Horney said for the Court:

> "In railroad parlance, as was pointed out in *Quinn v. Pere Marquette Ry. Co.,* 239 N. W. 376 (Mich. 1931), the term 'right of way' has two meanings: in one sense it is 'the strip of land upon which the track is laid'; in the other sense it is 'the legal right to use such strip,' and in this sense it usually means the right of way *easement.*" (Emphasis in original.)

This case is unlike *State Roads Comm. v. Johnson,* 222 Md. 493, 161 A. 2d 444 (1960), in which the Annapolis and Elkridge Railroad Company was held to have acquired an absolute fee simple title to property by condemnation in the light of the fact that "[t]he jurors declared in their inquisition upon oath that they condemned 'so much of the land represented as belonging to the said Leonard Iglehart * * * as of an absolute estate in perpetuity as [was] contained within the lines of the annexed plat * * *.' "

In *Richfield Oil Corp. v. Railroad Co.,* 179 Md. 560, 20 A. 2d 581 (1941), the phrase "right of way for railroad purposes" was used. In holding that this language "was the grant of an easement for railroad purposes and not a grant of the fee", Judge Collins said for the Court:

"Quoting *Elliott on 'Railroads,'* (3rd Ed.), sec. 1158, pages 627 and 628: 'Where the intention to convey a fee does not appear, as in the conveyance of a "right of way" for the railroad through certain lands, the company takes an easement only.' Quoting *Lewis on 'Eminent Domain,'* (3rd Ed.), sec. 468; 'The conveyance of a right of way or for specified uses, conveys an easement only.' Quoting *Jones on 'Easements,'* (1898 Ed.), sec. 212: 'Where the granting clause of a deed declared the purpose of the grant to be the right of way for a railroad, the deed passes an easement only, etc.' [citing other authorities] 1 *Thompson on Real Property,* page 533, sec. 420, defines 'a grant of a right of way to a railroad company to be the grant of an easement merely, and the fee remains in the grantor.' *Jones on Easements, supra,* sec. 211; 33 CYC *'Railroads,'* page 169; *Smith v. Holloway,* 124 Ind. 329, 24 N. E. 886." *Id.* at 572-73.

See also *East Wash. Railway v. Brooke,* 244 Md. 287, 293-294, 223 A. 2d 599 (1966), and Annot., 6 A.L.R.3d 973 (1966), entitled "Deed to Railroad Company as Conveying Fee or Easement".

An examination of the instruments here involved reveals that there is no actual conflict between the granting clause and the *habendum* clause. In other words, if the instruments were to be interpreted as granting an easement there would not be an actual and irreconcilable conflict or repugnancy between the two clauses. When examination is made of the language in the two statutes relative to the grantee it is noted that the uses other than railroad uses are for the purpose of laying out town sites, erecting buildings and opening and working quarries. It goes without saying that a strip of land 80 feet wide is hardly a town site. Likewise, it is an unlikely place for the erection of buildings of consequence when a substantial portion of the land apparently does not abut on

streets and it is not of a size to be laid out in streets, nor is it a likely location for a quarry.

The conclusion becomes inescapable that the grant was for purposes of the railroad. The granting clause itself refers to "a plat of the Rights of way of the said Columbia and Maryland Railway".

The addition of the language for "a right of way" in the *habendum* clause, obviously intended to have some meaning, makes clear the intent of the parties to grant an easement over the lands of the grantors for the railroad. Accordingly, we find no error.

## III.

As has been previously noted, the Transit Company proffered to prove that it had made agreements for use of part of the land with various utilities for the installation of their lines or pipes. It is clear that under the holdings of our predecessors the Transit Company had no right to enter into these agreements. In *Sapp v. N. C. R. R. Co.*, 51 Md. 115 (1879), the question presented to the Court was whether a prescriptive right to an easement for a private footway could be established alongside of or between the tracks of the railroad corporation. In rejecting this contention the Court said in part, prior to citing English authorities:

> "It appears from the facts stated that the easement set up is that of a private footway for some considerable distance, over the lands of a railroad corporation, alongside of or between the tracks of the road from the house of the plaintiffs to a public highway. Without stopping now to consider other essentials of an easement by prescription, it is familiar and elementary law, that title by prescription is founded on the presumption of a grant, and it follows from this that in order to establish a prescriptive right it must be claimed under and through some one who had *a right to grant or create* the easement claimed. Wash. on Easements, 120. That a rail-

road corporation has no power or right to grant an easement like this, of *footways* for persons to walk along their tracks or by the side of them, seems an almost self-evident proposition. It is obvious that if such power existed and were exercised it would be subversive of the very purposes for which railroad charters are granted." *Id.* at 124-25. (Emphasis in original.)

In *Amer. Tel. & Tel. Co. v. Pearce,* 71 Md. 535, 18 A. 910 (1889), the question presented was whether telegraph and telephone lines might be erected on a railroad right of way for the transmission of messages other than for railroad purposes. There our predecessors said:

"Casting an additional burden, for such a purpose, on land already subject to an easement, is just as much taking it for public use, as was the taking of it for the original easement * * *." *Id.* at 548.

See also *Potomac Edison Co. v. Routzahn,* 192 Md. 449, 460, 65 A. 2d 580 (1949) ; *Telephone Co. v. Tyson,* 160 Md. 298, 301, 153 A. 271 (1931), and *Potomac Elec. Power Co. v. Wall,* 153 Md. 229, 233, 137 A. 899 (1927).

The general rule as to that which must be shown to establish abandonment of an easement and the burden of proof relative to abandonment was set forth in *Ma. & Pa. RR. Co., supra,* where Judge Horney said for the Court:

"The general rule is that the right and title to a *mere* easement in land acquired by a *quasi-*public corporation, either by purchase, condemnation or prescription, for a public purpose is dependent upon the continued use of the property for that purpose, and when such public use is abandoned the right to hold the land ceases, and the property reverts to its original owner or his successors in title. See *Canton Co. v. Baltimore & O. R. Co.,* 99 Md. 202, 57 Atl. 637

(1904), where it was said at p. 218 (quoting in part from *Vogler v. Geiss*, 51 Md. 407 [1879]) :

  ' "A cesser of the use, coupled with any act clearly indicative of an intention to abandon the right, would have the same effect as an express release of the easement, without any reference whatever to time." And this seems to be in accordance with authority as well as reason.'

"In the *Canton* case, where the easement had been acquired by the railroad company in a condemnation proceeding for a considerable sum of money, where ties and rails had been laid and subsequently removed after the railroad had contracted to use the route and facilities of an adjacent railroad, and where there was positive evidence that the railroad had no intention of abandoning the easement, this Court held that mere nonuser of the easement or the adoption of another route did not necessarily constitute abandonment. But that case is clearly distinguishable from the instant case in at least one important aspect. In the *Canton* case, even though the railroad also had removed the ties and rails from the right of way, an official of the railroad had positively testified that the railroad had no intention of abandoning the easement, while in the case at bar, as we read the record, there was no evidence disclaiming an intent to abandon the right of way.

"While it is true that the burden of proving abandonment rests on the one who asserts or relies on it (*Klein v. Dove*, 205 Md. 285, 295, 107 A. 2d 82 [1954], citing *Sachs & Sons v. Ward*, 182 Md. 385, 35 A. 2d 161 [1943]), the law is well settled that the intent to abandon may be shown by the acts of a party indicating such an intention. *Glenn v. Davis*, 35 Md. 208 (1872)." *Id.* at 39-40. (Emphasis in original.)

See also Annot., 95 A.L.R.2d 468 (1964), entitled "What constitutes abandonment of a railroad right of way", and II *American Law of Property* § 8.97 (1952, 1962 Supp.) where it is said:

> "From what has been said it is apparent that, though the extinguishment of an easement by abandonment results from a manifestation of intention to abandon it, that intention must be manifested in ways other than by an oral expression of it. The manifestation must appear through the implications of action respecting the use authorized by the easement."

In *U. S. v. 1.44 Acres of Land, etc., Montgomery County, Md., supra,* Judge Northrop pointed out in a case involving the same Transit Company that the Public Utilities Commission of the District of Columbia and the Maryland Public Service Commission both authorized the Transit Company to abandon street railway service. Moreover, the Public Service Commission of Maryland in its order relative to that portion of the line involved in that case made reference to the act of Congress granting the Transit Company a franchise with an obligation to initiate and carry out a plan of conversion of its streetcar operations to bus operations. After discussing the facts, quoting *Hagerstown & F. Rwy. Co. v. Grove,* 141 Md. 143, 118 A. 167 (1922), its quotation from *Vogler v. Geiss,* 51 Md. 407 (1879), (quoted by Judge Horney in *Ma. & Pa. RR. Co.*) and referring to *Ma. & Pa. RR. Co.* and *East Wash. Railway v. Brooke, supra,* he said:

> "In light of these facts and the decisional law of Maryland as outlined, this court must conclude that any railway easements the defendant held in Maryland have been abandoned. The granting of gas and water line easements, resistance to trespassers, and payment of taxes do not persuade this court otherwise. The payment of taxes is not at all conclusory both under fed-

eral and state law, *Oklahoma City-Ada-Atoka Ry. v. Ada,* 182 F. 2d 293, 296 (10th Cir. 1950); *East Washington Ry. v. Brooke,* 244 Md. 287, 223 A. 2d 599 (1965)." *Id.* at 1069.

There is insufficient evidence in this record for us to determine that the Transit Company intended to abandon its easement. Accordingly, upon that point under Maryland Rule 811 we shall remand the case without affirmance or reversal for further proceedings.

> *Decree affirmed on the issue of easement and on the issue of abandonment remanded for further proceedings without affirmance or reversal; one-half of the costs to be paid by the appellant and one-half of the costs to be paid by the appellee State Roads Commission.*