POTOMAC ELECTRIC POWER COMPANY *v.*
FLORENCE G. WALL.

*Width of Highway—Electric Light Poles—Additional Servi-*
*tude—License from Landowner.*

The fact that Code, art. 25, sec. 151, provides that all roads
opened under that article shall be thirty feet wide, and that the
local county code authorizes the county commissioners to accept
and maintain roadways, provided they are not less than thirty
feet wide, was not conclusive that a particular road, used by

the public and kept in repair by the county for many years, was thirty feet wide.                                  pp. 232, 233

A public highway easement does not entitle an electric power company to impose on the land subject to the easement an additional servitude by erecting poles within the highway limits.

p. 233

A franchise granted to an electric power company to construct its lines upon the highways does not authorize the company to place poles on land subject to a highway easement, against the owner's objection and without resort to the power of eminent domain.                                  p. 233

Where a power company has wrongfully erected poles upon land subject to a highway easement, the fact that it has a franchise to construct its lines upon the highways does not confine the owner of the land to an action for damages, in order to assert his rights, and preclude him from seeking a mandatory injunction to compel the removal of the poles.    p. 233

That the owner of land submitted to the erection of poles thereon, when told by the person in charge of their erection that they were placed beyond the line of her property, was not equivalent to a license for their erection.             p. 234

Where poles were erected by an electric power company on private land, outside the limits of a highway, without the owner's consent and under a misapprehension on her part as well as on that of the company as to the line of her property, and the poles were so placed as to interfere with the symmetrical growth of a hedge planted by her, *held* that a mandatory injunction should issue to compel the removal of the poles.

pp. 234, 235

In affirming a decree for a mandatory injunction to compel the removal of poles wrongfully erected by a power company on private land, *held* that, to avoid undue inconvenience to the company and persons served thereby, the company should be given leave to ask that the enforcement of the decree be temporarily suspended, that it might have an opportunity to acquire the necessary easement for the erection of the poles within the limits of a nearby highway.                       p. 235

*Decided June 8th, 1927.*

Appeal from the Circuit Court for Montgomery County, In Equity (PETER, J.).

Bill by Florence G. Wall against the Potomac Electric Power Company. From a decree for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*S. R. Bowen,* with whom were *H. M. Keyser* and *Wm. H. Talbott* on the brief, for the appellant.

*Albert M. Bouic,* for the appellee.

URNER, J., delivered the opinion of the Court.

The purpose of this suit is to compel, by mandatory injunction, the removal by the Potomac Electric Power Company of a number of poles which it is alleged to have erected without authority on land of the plaintiff along the course of a public road in Montgomery County. The defendant's answer asserted that the poles are located in the margin of a public road, where the defendant has a franchise to erect and maintain them for the purposes of the electric light and power business in which it is engaged as a public service corporation, and that the plaintiff has no right to require the removal of the poles, but is limited to the recovery of damages for any injury to her property caused by their erection and maintenance, it being denied, however, that any such injury has resulted. It was further averred in the answer that the poles were erected with the plaintiff's "permission and license." But it was admitted that she subsequently made a request for their removal, with which the defendant has not complied. The court below found as a fact, from the evidence, that the poles are located on the plaintiff's land beyond the proved limits of the public roadway, and their removal was ordered on the ground that such an occupation of her property could not be rightfully con-

tinued against her will.  The road in question, for nearly sixteen hundred feet of its length, extends along the southern margin and within the lines of the plaintiff's twenty-five acre tract of land.  Prior to the year 1919 the road was defined by fences on both sides, but in that year the plaintiff planted a hedge to take the place of the fence along the side of the road nearest to her residence.  It was her belief then, according to the testimony, that this fence marked the southern line of her property.  In order to allow sufficient space for the hedge to spread, within the understood limits of the plaintiff's land, it was planted about two and one-half feet north of the fence.  Later in the same year the plaintiff had the fence removed.  In the fall of 1923 the poles in controversy, of which there are fourteen, were erected in close proximity to the hedge, on its southern side, along the top of a sodded bank, and from five to ten feet distant from the traveled portion of the roadway.  A guy wire attached to one of the poles is anchored beyond the hedge in the plaintiff's grounds.  Cross-arms supporting the service wires extend from the poles over the hedge.  The poles form part of a branch line of the defendant serving two of its patrons. The consent of the plaintiff to the erection of the pole line was not requested.  While the wires were being strung, the plaintiff told the defendant's foreman, as she testified, that the poles were placed too close to the hedge, but he replied that the road was thirty feet wide and that the hedge was on the "county line."  It appears that the poles were erected at a measured distance of fifteen feet from the middle line of the used roadway, and that most of them were located north of the line on which the fence replaced by the hedge had formerly stood.  Some of the poles have been partly surrounded by the hedge, as it has grown in breadth.

In selecting the location of its poles along the road on which the plaintiff's land abutted, the defendant acted upon the supposition that the road area had a legal width of thirty feet and that its northern line could be ascertained by measuring fifteen feet from the middle of the traveled way.  This

theory is sought to be supported by the statutory provision (Code, art. 25, sec. 151) that all roads opened under the article cited shall be thirty feet wide, and by the authorization to the county commissioners, in sections 459 and 460 of the Local Code of Montgomery County, to accept, by recorded declaration, and to maintain, roadways dedicated, or subjected for twenty years to public use, provided they are not less than thirty feet in width. There is no evidence that the road in question was ever intended to be thirty feet wide by dedication or formal acceptance. It is a road which has been used by the public and kept in repair by the county for many years, but there is no indication in the record that the northern limit of the road space was ever farther from the middle of the used roadway than the old fence which the hedge planted by the plaintiff has replaced. The defendant's poles were erected beyond the limits of the road, as established by the fences which defined its width for a period extending into the remote past.

But apart from the question as to the proper width of the road, the portion on which the defendant has planted its poles is proved without dispute to be within the limits of the plaintiff's land, and she is undoubtedly the owner of the soil over which it is used. The public highway easement to which the land is subject does not entitle the defendant to impose upon it an additional servitude against the plaintiff's objection and without resort to the power of eminent domain. The construction of the defendant's line of poles and wires along the margin of the roadway subjects the plaintiff's land to a burden which is independent of the highway easement exercised by the public. No authority to take the plaintiff's property for the defendant's corporate objects is conferred by its franchise to construct its lines upon the highways of the county. Nor does the existence of such a franchise restrict the assertion of the land owner's rights to an action at law for damages. These propositions are so definitely sustained by prior decisions of this Court as to require no further discussion in this opinion. *Amer. Tel. & Tel. Co. v.*

*Pearce,* 71 Md. 535; *Ches. & Pot. Tel. Co. v. Mackenzie,* 74 Md. 36, 47; *Baltimore County Water Co. v. Dubreuil,* 105 Md. 424; *Maryland Telephone Co. v. Ruth,* 106 Md. 644, 653.

The contention that the poles were erected with the plaintiff's permission is not sufficiently supported by the proof. Concededly, she was not consulted on the subject. The work was planned and executed on the theory that she had no interest in the ground on which the poles were to stand. Upon that assumption the plaintiff appears to have been told, in effect, when she questioned the foreman as to the location of the poles, that they were placed beyond the line of her property. The submission of the plaintiff to the completion of the work, in view of such a statement, was not equivalent to a license. After a survey had shown the representation to be erroneous the removal of the poles was demanded and refused. It is clear that the defendant's position is not strengthened by a mutual mistake, which it originated, as to the limits of the plaintiff's ownership. Even if the plaintiff had given express permission to the defendant to erect poles on her land, the license thus gratuitously conferred would not be irrevocable. This case is not like that of *Balto. & O. R. Co. v. Straus,* 37 Md. 237, cited by the appellant, where a land owner who had allowed, without objection, a railroad company to expend large sums of money in the construction of its tracks in a public street, was held not to be entitled to relief by injunction in a suit brought long afterwards for that purpose. There is a substantial difference between electric light poles and a railroad track in regard to the expense and difficulty of removal and relocation.

Upon no just principle can the plaintiff be required, under the circumstances of this case, to submit to the permanent maintenance of the defendant's poles in their present position on her premises. Not only were they erected under a misapprehension as to her rights, and without her consent being asked or obtained, but some of them are in the space reserved for her hedge, and are now interfering with its symmetrical growth. Nearly all of the poles, as already stated, are on

land of the plaintiff not included in the public road area as defined by its long established boundaries. There is no apparent reason why they could not be moved to less objectionable points within the proper limits of the highway reservation. The right thus to locate the poles may be acquired by contract or condemnation. To avoid undue inconvenience to the defendant and the persons served by the line, an opportunity should be given for the acquisition of the necessary easement, and to that end, in affirming the decree, we shall reserve to the defendant leave to apply for a suspension of its enforcement for such reasonable period as the court below may specify.

> *Decree affirmed, with costs, and cause remanded with leave to the defendant to apply for a stay as indicated in the opinion.*