CHESAPEAKE & POTOMAC TELEPHONE COMPANY *v.* CURTIS O. TYSON ET AL.

CURTIS O. TYSON ET AL. *v.* CHESAPEAKE & POTOMAC TELEPHONE COMPANY.

[Nos. 76, 77, October Term, 1930.]

*Decided January 16th, 1931.*

The causes were argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*S. A. Williams,* with whom were *Shirley Carter* and *Philip H. Close* on the brief, for the Chesapeake & Potomac Telephone Company.

*Stewart O. Day* and *George M. Brady,* with whom were *Maloy, Brady & Yost* on the brief, for Curtis O. Tyson and others.

URNER, J., delivered the opinion of the Court.

In 1918 the defendants, in consideration of fifty dollars, granted to the Chesapeake & Potomac Telephone Company "the right to construct, operate, and maintain its lines of telephone and telegraph, including the necessary poles, cables, wires and fixtures upon and along the property" of the defendants in the first district of Harford County, "said poles to be located only upon and along the roads, streets or highways adjoining the said property; to permit the attachment of the wires of any other company or person; to cut down or trim any trees along said lines except between poles thirty (30) to thirty-six (36) both inclusive; so as to keep the wires cleared at least five feet; to erect and set the necessary guy and brace poles and anchors, and attach thereto and to trees the necessary guy wires, * * *" it being "expressly understood and agreed that the cross-arms, cables, wires, fixtures, anchors and anchor guys will not extend any further over the private property of said grantor than at present, approximately eight to ten feet." The conveyance included "the further right to trim all trees at least two feet between

poles thirty (30) to thirty-six (36), both inclusive," and concluded as follows: "This grant covers sixty (60) line poles which are now or to be located abutting our property on Bel Air-Van Bibber Road and on Van Bibber-Edgewood Road."

In 1930 the State Roads Commission obtained from the defendants an easement in additional land required for the purpose of widening and realigning the Bel Air-Van Bibber Road. The agreement conferring the new easement provided that "no telephone, gas or electric poles, conduits or wires shall be allowed in, through or over the right of way hereby granted. This easement being granted for road purposes only." In consequence of the realignment and improvement of the road, it became necessary for the telephone company to relocate seven of the poles erected under its grant from the defendants in 1918. Three of the removals were to positions on ground within the limits of the additional highway easement, and four of the relocations were on the defendants' abutting land beyond the road area as widened. In order to prevent interference by the defendants with the work of moving the poles, a preliminary injunction was procured by the telephone company on a bill in equity which the final decree dismissed. A similar disposition was made of a cross-bill, filed by the defendants for an injunction to enforce their opposition to the erection and maintenance of the telephone poles at the new locations described. Both the plaintiff corporation and the defendants have appealed from the decree.

The telephone company's bill was filed upon the assumption that its poles were being moved to points within the outlines of the additional easement secured by the State Roads Commission, but the actual result of the removal operations, according to the undisputed proof, was the erection of four poles on property of the defendants which is not affected by either the original or the supplemental road servitude. It is perfectly clear that the telephone company is not entitled, and its counsel at the trial below stated that it does not propose, to perpetuate that trespass. The preliminary injunction, as prayed for and issued, did not in terms sanction such

an encroachment on the defendants' land, but it was a grievance which could properly have been redressed under the allegations of the cross-bill. The right of an action at law for damages does not preclude relief to the defendants, by way of mandatory injunction, from the telephone company's continued occupation of their land for its line without legal or contractual authority. *Potomac Elec. Power Co. v. Wall,* 153 Md. 229, 137 A. 899.

The principal question in the case is whether the easement granted by the defendants to the telephone company in 1918 extends to the additional land acquired from them by the State Roads Commission for the widening and straightening of the road in 1930. Unless the conveyance to the company was intended to apply to the use, for its telephone line, of any land of the defendants on which the existing highway might thereafter be relocated, the right to such an extension of the user must be denied. As owners of the fee in the roadway, the defendants have a valid ground of objection to the imposition upon the land of any servitude not resulting from agreement, prescription, or condemnation. The highway easement does not include the right of user by a public service corporation for its independent purposes. *American Tel. & Tel. Co. v. Pearce,* 71 Md. 535, 18 A. 910; *Chesapeake & Pot. Tel. Co. v. Mackenzie,* 74 Md. 36, 21 A. 690; *Baltimore County Water Co. v. Debreuil,* 105 Md. 424, 66 A. 439; *Maryland Tel. Co. v. Ruth,* 106 Md. 644, 68 A. 358; *Potomac Elec. Power Co. v. Wall, supra.* The right here asserted by the telephone company therefore depends upon the construction and effect of the conveyance of 1918, which is the exclusive source of its authority to use any of the defendants' land.

The deed from the defendants to the telephone company granted an easement for the construction and maintenance of sixty poles, to support the necessary wires and fixtures, upon an existing thoroughfare. It was stipulated that the cross-arms, anchors, guys, and other equipment of the line should not extend further than "at present" over the private property of the grantors. The pole locations now in controversy

are not within the limits of the road as it existed in 1918, and the cross-arms, of course, extend further over the private land of the defendants than when the easement was created. While the deviation from the original road space was not great, yet it actually transgressed the limitation which the grant prescribed. The explicit terms of the deed preclude the theory that the easement was intended to be exercisable over any future course to which the road might be changed. If a slight departure from its terms were held to be permissible, it would be difficult to place a restriction upon further alterations of its scope, against the protest of the landowners, and the measure of their right to object to such extensions would be rendered seriously indefinite.

It was argued that, as the defendants, by granting to the State Roads Commission a right of way over the additional ground required for the realignment and improvement of the highway, co-operated in the changes which necessitated the removal of some of the telephone company's poles to points outside of the original road area, they are estopped to complain of those relocations. The conveyance, by agreement, of the new road easement, was an alternative to its acquisition under the power of eminent domain, and could not, in our opinion, be justly given the estoppel effect for which the appellant contends.

The removal of the poles erected in positions beyond the lines of those originally occupied under the grant of 1918 should be required by decree under the defendants' cross-bill, and the case will be remanded for that purpose. If the immediate enforcement of such a decree should be proved to the lower court to be unduly injurious to those utilizing the appellant's telephone service, a reasonable opportunity may be given by a suitable stay, to secure the requisite further easement from the defendants by condemnation or purchase.

> *Decree affirmed in part and reversed in part, and cause remanded for a decree in conformity with this opinion, the costs to be paid by the appellant corporation.*

Parke, J., filed a dissenting opinion as follows:

Because of a conviction that the construction of the grant adopted by the court results in a defeat of the purpose of the instrument, as disclosed by its terms and the circumstances of its execution, the writer ventures to express the reasons for this dissent.

In the angle formed by the intersection of two public highways, which were then known as the Bel Air-Van Bibber Road and the Van Bibber-Edgewood (now Post) Road, there was a tract of land which fronted on both public highways whose center lines were in its boundaries. On this tract, and along and near and at some points outside, and at other points inside, of the northern and eastern right of way lines of these highways, the Chesapeake & Potomac Telephone Company of Baltimore City had set up sixty poles as a part of its telephone system. Under these circumstances the owners of the tract executed the grant which ran to the company, its successors and assigns, and gave it the right to construct, operate, and maintain its lines of telephone and telegraph upon and along the property of the grantors, subject to the provision that the poles of the lines were to be located upon and along the roads, streets, and highways adjoining the tract. It is important to observe that the servitude imposed is not of a single telegraph and telephone line but of the grantee's "lines," and that the deed expressly includes a subsisting line by this concluding paragraph: "This grant covers (60) line poles which are now or to be located abutting our property on Bel Air-Van Bibber Road and on Van Bibber-Edgewood Road." The context of the deed, and especially the use of the plural term "lines" and of the phrase "along the roads, streets or highways adjoining the said property" in prescribing the location of poles, when but one line was constructed and no street was in existence, are irrefutable evidence that the grant contemplated future lines along other highways than those subsisting at the time of the grant.

While the terms of the grant explicitly confine the location of the poles of the future lines along and upon the highways coming within the description of the grant, they did not ap-

ply to the line which had been brought within the operation of the grant by its last paragraph, which has been quoted, because this line had been physically located before the grant, and its sixty poles had been permanently set along and near, but, indifferently, within and without the limits of the then existing highways. This built line, however, and all other lines were subject to the general provision "that the cross-arms, cables, wires, fixtures, anchors and anchor guys will not extend any further over the private property of said grantor than at present, approximately eight to ten feet." So it would appear that the servitude imposed was the right of the company to erect, construct, and maintain telephone and telegraph lines on the tract of the grantors along the limits of the rights of way of the roads, streets, or highways which would adjoin the tract, provided that none of the cross-arms and other fixtures should extend more than eight or ten feet over the adjacent land of the grantors that was not occupied as a highway.

It is submitted that this construction should not have been rejected. The general rule that the rights of the parties to the deed must be ascertained from its words is subject to the modification that the surrounding circumstances to which the deed had reference when it was made may be taken into consideration in order to discover the intention of the parties to the deed, else the privilege granted may be enlarged beyond what was contemplated or may be so restricted as to defeat the intended benefits of the grant. *Goddard on Easements* (8th Ed.), 340, 341, 376, 402; *Riverdale Park Co. v. Westcott,* 74 Md. 311, 322-325, 22 A. 270; *West Arlington Land Co. v. Flannery,* 115 Md. 274, 280, 80 A. 965; *Tiffany on Real Property* (2d Ed.), sec. 367, p. 1329. In addition, the grant was for a particular purpose, which must be regarded in construing the grant in order to ascertain the nature and extent of the easement. *David v. Kingscote,* 6 M. & W. 174, 197; *Bishop v. North,* 11 M. & W. 418, 425; *Frank v. Benesch,* 74 Md. 58, 21 A. 550; *Redemptorists v. Wenig,* 79 Md. 348, 354, 355, 29 A. 667.

In the deed at bar, the clear purpose of the grantors was to give, and of the grantee to obtain, rights of way for telegraph and telephone lines along the existing or future roads, highways, and streets adjoining the land of the grantors in a certain locality. The rights and obligations of the grantors and the grantee were reciprocal. If the highways along which the line or lines of the grantee were constructed should be changed, the grantee would have to make a corresponding alteration and removal, because in this way only would the grantors enjoy the abandoned portion of the highway free of the incumbrance of the servitude, and the grantee comply with the inhering limitation in the easement.

The soundness and reasonableness of this construction is illustrated by the present situation. The company built no new line, but maintained the original one. In 1930 the State Roads Commission took over the highway known as the Bel Air-Van Bibber Road, and determined to straighten its course, widen it from thirty feet to forty feet, and construct a new roadway as relocated. Obviously it would be advantageous for the owners of the tract to replace the irregular, winding route of the ancient highway with a straightened, metaled, state thoroughfare of greater width, so the owners attempted to convey by an unacknowledged paper writing the new right of way, which embraced in large part the bed of the old highway, and caused to be inserted in the instrument a stipulation "that no telephone, gas or electric poles, conduits or wires shall be allowed in, through or over the right of way hereby granted." See *Brehm v. Richards*, 152 Md. 126, 131-135, 136 A. 618. This provision could not affect the rights of the company under its precedent deed. When the State finished the new roadway, it was a different highway in location, width, surface, and control, but one which adjoined the tract in question, and so was within the purview of the grant of 1918, by whose express terms the company, as against the owners of the tract, had the right to construct, operate, and maintain its telephone line and fixtures along and upon such new highway subject to the limitation that none of its fixtures extend over the land ad-

jacent to the right of way of the new highway more than from eight to ten feet; and subject to the correlative obligation on the part of the company of removing its poles, which might not be located within the right of way of the state highway, and any fixtures which might extend beyond the prescribed distance from the boundary line of the new route. In this manner the intention of the parties to the grant, to confine the poles of the company's lines to the public way, and the projection and extension of the fixtures to a definite distance, and thereby free the land of the grantors, not in the public use as a roadway, from unsightly poles and a burdensome extension of fixtures, is gratified, and the rights of the company are maintained and enforced. The servitude which would thus result would not cast any additional or different burden upon the premises of the owners of the servient estate, since it would precisely be the privilege granted.