PERCY RICHARDSON, PETITIONER-RESPONDENT, v. ES-
SEX NATIONAL TRUNK AND BAG COMPANY, INCOR-
PORATED, A CORPORATION, AND MASSACHUSETTS
BONDING AND INSURANCE COMPANY, RESPONDENTS-
APPELLANTS.

Argued May 21, 1937—Decided September 22, 1937.

For the appellants, *Kalisch & Kalisch* (*Isidor Kalisch,* of
counsel).

For the respondent, *David Roskein* (*John A. Laird,* of
counsel).

The opinion of the court was delivered by

PERSKIE, J. This is a workmen's compensation case. It
presents the problem of the proper construction and applica-
tion of paragraph 2 of chapter 81, *Pamph. L.* 1923, *p.* 162,

as amended by chapter 55, *Pamph. L.* 1936, *p.* 145, both of which acts were passed to assist in carrying out the purposes of chapter 74, *Pamph. L.* 1919, *p.* 138.

Paragraph 3 of the act of 1936, *supra,* as lastly amended provides as follows:

"2. The sums collected under the terms of this act shall constitute a fund out of which a sum shall be set aside each year by the Commissioner of Labor from which compensation payments in accordance with the provisions of paragraph eleven (b) of the Workmen's Compensation act shall be made to persons totally disabled, as a result of experiencing a permanent injury under conditions entitling such persons to compensation therefor, when such person had been previously permanently and partially disabled from some other cause. In such cases the compensation payable from said fund shall cover that portion of the period for which the employer is not legally responsible due to the permanent and partial disability suffered or possessed by the employe at the time that the employe sustained the injury as a result of which the employe became totally and permanently disabled. Payment to such totally disabled employes shall be made from said fund by the State Treasurer upon warrants of the Commissioner of Labor. * * *"

The facts which give rise to the problem are not in dispute. They are brief, and are as follows: On September 8th, 1900, respondent, who was the petitioner below, lost his right leg in a railroad accident. More specifically, his right leg was amputated about two and one-half inches below the knee. He was, however, able to, and did in fact, with the aid of an artificial limb, continue in his occupation as a trunkmaker. While so employed by appellant, who was the respondent below, he was, on September 26th, 1933, directed to post a sign on the premises. While walking upon a flight of stairs in appellant's premises, in order to carry out instructions, he stepped upon a screw on the stairs which caused him to slip and fall. As a result of that accident his left leg was injured. The injuries did not respond to medical treatment. They necessitated, and respondent submitted to, an operation for

the removal of the semi-lunar cartilege of the left knee. It appears that if the right leg had been normal the resultant injuries to the left leg would have approximated a permanent disability of a thirty per cent. loss of that member of his body. But, due to the impossibility of co-ordinated function with the right leg, pain, &c., it was found that the permanent disability resulting from the second accident approximated a fifty per cent. loss of the left leg.

Upon this determination of the facts, the deputy commissioner, in the workmen's compensation bureau, entered a rule for judgment based upon the allowance of temporary disability from October 26th, 1933, to November 7th, 1934, at $10 a week, which sum was paid, and upon the further allowance of permanent total disability amounting to fifty per cent. loss of respondent's left leg, *i. e.,* compensation for eighty-seven and one-half weeks at $10 a week. He refused to find that respondent had suffered a total disability because of the lack of proof of the loss of two major members of the body occurring in the same accident. Act of 1919, chapter 93, pages 201-204, as amended by *Pamph. L.* 1928, *ch.* 135, *p.* 281.

In the Essex County Court of Common Pleas, the learned trial judge held that respondent had suffered a total and permanent disability, as a result of the last accident, and accordingly allowed respondent four hundred weeks compensation, *all of which was to be paid by appellant.* That finding was made to rest upon the basis that the act of 1919 was not the conclusive method of determining total disability; that the proper method to reach that conclusion is to consider the several injuries collectively with proper consideration, with due regard to, their cumulative effect. *Orlando* v. *Ferguson,* 90 *N. J. L.* 553; 102 *Atl. Rep.* 155; *Simpson* v. *New Jersey Stone and Tile Co.,* 93 *N. J. L.* 250; 107 *Atl. Rep.* 36; *Gorman* v. *Miner-Edgar Chemical Corp.,* 9 *N. J. Mis. R.* 180; 153 *Atl. Rep.* 271. And since an employe is entitled to compensation for the end result of an accident regardless of his pre-existing condition (*Cf. Newcomb* v. *Albertson,* 85 *N. J. L.* 435; 89 *Atl. Rep.* 928; *Lundy* v. *Brown,* 93 *N. J. L.* 469; 108 *Atl. Rep.* 252). the latter condition is no bar to an award for total and permanent dis-

ability. *Cf. Granowitz* v. *Hay Foundry,* 9 *N. J. Mis. R.* 1165; 157 *Atl. Rep.* 130; *affirmed,* 109 *N. J. L.* 394; 162 *Atl. Rep.* 582.

Appellant obtained a writ of *certiorari* to review the judgment based upon that finding. The allocatur was, however, in due season vacated to the end that the trial judge might consider the applicability of the act of 1936, which had become effective subsequent to the date of the judgment in the bureau and which act, for reasons not made to appear, apparently had not been considered by him. The latter, upon a consideration of the act of 1936, entered a supplemental and amended rule for judgment. · As so entered it reads "* * * that the employer be held responsible for total disability less the scheduled loss of a foot, to wit: one hundred and twenty-five (125) weeks compensation at the rate of $12 a week which is hereby assessed against the 'One Percent Fund' * * *." The construction thus given to the act compels appellant to pay the difference between four hundred weeks compensation allowed for the second accident and one hundred and twenty-five weeks compensation allowed for the first accident, or two hundred and seventy-five weeks of compensation. Clearly, had respondent suffered only the second accident, appellant's obligation, under the law, would have been limited to fifty per cent. of the maximum allowance of one hundred and seventy-five weeks or eighty-seven and one-half weeks compensation for the loss of his left leg. But because of the fact that respondent suffered a prior accident for which appellant was, of course, in nowise responsible, he was adjudged to pay additional compensation for one hundred and eighty-seven and one-half weeks. Such a result immediately suggests the question as to whether the language of the act of 1936 warrants such an interpretation. The Supreme Court allowed a writ of *certiorari,* and affirmed the judgment of the Pleas. Hence this appeal.

Our approach to and disposition of the problem ever present in the proper interpretation and application of legislation is well charted. We must consider, first, the old law; second, the mischief; and lastly the remedy. *Stephenson* v. *Stephenson,* 102 *N. J. Eq.* 50, 54; 139 *Atl. Rep.* 721.

Let us recur for a brief examination of the history and development of the act in question.

Under the Workmen's Compensation act of 1911, as amended by chapter 174, *Pamph. L.* 1913, *p.* 302, we have held that an award of total permanent disability against an employer was justified when a workman, having already lost one eye at the time of entering the employment, sustained an accident arising out of and in the course of his employment which caused the loss of the remaining eye, and thereby rendered him totally blind. *Combination Rubber Manufacturing Co.* v. *Obser,* 95 *N. J. L.* 43; 115 *Atl. Rep.* 138; *affirmed,* 96 *N. J. L.* 544; 115 *Atl. Rep.* 138. In reaching this result no reference appears to have been made, apparently it was not raised, to paragraph 11, section II (schedule of compensation) subdivision (v) of chapter 93, *Pamph. L.* 1919, *p.* 200-204, which provides:

"(v) The loss of both hands, or both arms, or both feet, or both legs, or both eyes, or any two thereof as a result of any one accident, shall constitute total and permanent disability, to be compensated according to the provisions of clause (b)."

The fact that total and permanent disability was found upon a theory (that pre-existing conditions of injury or disease are no bar to an award for total disability) *extra* the provisions of the act of 1919, is beside the point. We may, however, observe in passing that the holding in the Obser case illustrates that there are circumstances other than those set forth in the act of 1919, upon which total and permanent disability may be imposed upon an employer. Under analogous circumstances the same result has been reached since the passage of the act of 1919. *Cf. Granowitz* v. *Hay Foundry, supra.* The issue in the Obser case and the issues in the case at bar are, moreover, entirely different. In the former case, the issue was whether the employe sustained a total and permanent disability. That circumstance is here conceded. In the Obser case, the employer was charged with the entire payment of the total and permanent disability. In the instant case, the precise issue is how shall the payment

for the conceded total and permanent disability sustained by respondent be apportioned as between the state fund and the employer.

It requires no extended discussion to demonstrate the obvious hardship flowing from a requirement which compels an employer to pay to an employe for a disability sustained by the latter as the result of an accident which is in nowise related to or connected with the employment. The legislature recognized that fact. Thus it enacted chapter 81, *Pamph. L.* 1923, *p.* 162.

Under the last stated act there was created what is now commonly termed the state "One Per Cent Fund." Out of this fund compensation payments are made "in accordance with the provisions of paragraph eleven (b) of the Workmen's Compensation act, * * * to persons totally disabled, as a result of experiencing a permanent injury under conditions entitling such person to compensation therefor, when such person had previously been permanently and partially disabled from some other cause, * * *." That act was construed to mean that payments thereunder had to be made only when the total disability resulted from *two compensable* accidents. *Addotta* v. *Blunt,* 114 *N. J. L.* 85; 176 *Atl. Rep.* 105. (Italics ours.)

Again, and lastly, the legislature took notice of this construction given to the act of 1923. It acted; it passed the act of 1936 which, so far as is pertinent here, relieved the employe of the necessity of showing that the first disability was the result of a compensable accident, and made the provisions of the act retroactive. *Chambers* v. *Toohey,* 14 *N. J. Mis. R.* 780; 187 *Atl. Rep.* 49.

It is only natural, in the practical administration of such a complex and relatively new state governmental function as the rehabilitation of injured persons that unforeseen contingencies should arise from time to time. But we clearly discern in the act of 1936 a continued and progressive development of the law to meet unforeseen contingencies as they arise to the end that full force and effect be given to the objective sought to be accomplished by the state, namely, to

make its plan of rehabilitating injured persons workable and a useful reality. That goal can only be accomplished if all affected act in co-operation. The state has done, and is doing, its part; the employe—the direct beneficiary—undoubtedly welcomes the opportunity of engaging in honorable and gainful occupation; but how was the employer to be induced to co-operate? Certainly he could not be induced to co-operate upon a premise that would impose a liability upon him such as was imposed upon the employer in the Obser case. Thus the legislature set out to, and did, eliminate the employer's liability for an accident unrelated to the employment of the injured person. We discern in its legislation of 1936, a clear intent not to impose any greater obligation upon an employer who hires or employs a person previously injured than if he had hired a person not so injured.

The language of the last stated act fully supports our construction and application thereof. It provides that the state one per cent. fund shall make payments "to cover *that portion* of the period for which the employer *is not legally responsible due to* the permanent and partial disability suffered and possessed by the employe at the time that the employe sustained the injury as a result of which the employe became totally and permanently disabled." (Italics supplied.) This, to us, evinces a definite purpose to exclude liability for disabilities not flowing from the second accident. If it were otherwise the whole philosophy upon which the state's plan is found would crumble and fall; it would be rendered nugatory. This clearly was not the purpose of the act of 1936.

In fine, we conclude from the language employed in the act of 1936, there flows the compelling conclusion that the employer is liable only for the second accident; for the injuries resulting from the accident which arose out of and in the course of the employment with him. Here that liability is for a fifty per cent. loss of respondent's leg; the state one per cent. fund is liable to respondent for the difference necessary to satisfy the total and permanent disability suffered by him.

Judgment is reversed, without costs.

54

*For affirmance*—None.

*For reversal*—THE CHIEF JUSTICE, TRENCHARD, CASE, BODINE, HEHER, PERSKIE, DEAR, WOLFSKEIL, RAFFERTY, COLE, JJ. 10.